THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MALCOLM CEMOND, Defendant-Appellant.

First District (3rd Division)   No. 1—88—1692

Opinion filed December 30, 1992.—Rehearing denied April 2, 1993.

Maria Harrigan, of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Elizabeth Sklarsky, and Anne C. Scrivner, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Defendant, Malcolm Cemond, was convicted of aggravated criminal sexual abuse (Ill. Rev. Stat. 1985, ch. 38, par. 12—16) in a jury trial and sentenced to seven years' imprisonment. On appeal, defendant contends that (1) the trial court erred when it admitted evidence of defendant's alleged other criminal conduct; (2) the trial court erred when it refused to question prospective jurors whether they would find children to be more believable and sympathetic witnesses than adults; and (3) the trial court erred when it instructed the jury using Illinois Pattern Jury Instructions, Criminal, No. 3.06—3.07 (2d ed. 1981) (hereinafter IPI Criminal 2d). We affirm.

On June 29, 1986, nine-year-old N.J., her 13-year-old sister K.W., and their 13-year-old cousin R.M. stopped at defendant's apartment on their way home from church. When they arrived, defendant was with F.N., a six-year-old boy whom he was tutoring. Defendant offered to take the three girls and F.N. to lunch to celebrate F.N.'s birthday. Defendant telephoned N.J. and K.W.'s mother to ask for permission to take the children to lunch. After receiving her consent, defendant, his friend David, N.J., K.W., R.M. and F.N. drove to McDonald's and ate lunch. After lunch, the group went to the beach. On the way home from the beach, defendant's automobile broke down. David, K.W. and R.M. took a Chicago Transit Authority bus to defendant's home to get David's automobile while defendant, N.J. and F.N. remained with the disabled vehicle. After David, K.W. and R.M. had left, N.J. testified that the following events occurred:

"Q. What happened next?

A. And then [defendant], he gave me some Kool-Aid. And I was eating it. And then he grabbed my wrist, and pulled me—

at first, he—he unzipped his pants. And he covered up his—his—

Q. He uncovered what?

A. He covered up his penis.

Q. Did you see his penis?

A. Yes.

Q. You say he grabbed you by the wrist? What did he do?

A. He pulled me on top of his penis.

Q. Which direction were you facing?

A. Face to face.

Q. And what happened next?

A. And then he went under my shirt and felt on my chest and my back.

Q. He was using his hands to do that?

A. Yes.

Q. And after he did that, what did he do next?

A. And then he started—he was smiling and making moans.

Q. Did you feel his penis?

A. Yes.

Q. Where was it?

A. Between my legs.

Q. Did you still have your short pants on?

A. Yes.

Q. And did he do anything else?

A. And then he squeezed me—he squeezed me. And then his hands was on my butt when he was squeezing me.

Q. When his hands were on your butt, did he do anything with his hands?

A. He was moving me up and down.

Q. And when he was doing that, you said he was making a noise. What noise was he making?

A. Moan noise.

* * *

Q. After—as [defendant] was doing the things to you, what happened next?

A. And then the—my sister (K.W.) and them drove up. And they blowed the horn.

* * *

Q. And you said they hit the horn. What happened next?

A. And then [defendant] pushed me off of him. And then I ran out and told [K.W.].

Q. Before you got away from [defendant], were you trying to get away from him.

A. Yes.

Q. And what happened?

A. I was pushed—I was pushing him away from me, but he had me too tight.

Q. How was he holding you?

A. He was holding me like real tight. He was squeezing me with his hands.

\* \* \*

Q. And what did you do when you got away from [defendant]?

A. I went to tell [K.W.].

\* \* \*

Q. And did you tell [K.W.]?

A. I told her that [defendant] was feelin' all over me."

N.J.'s testimony was substantially corroborated by F.N. and K.W. Upon returning home, N.J. and K.W. told their mother that defendant had tried to rape N.J. Defendant was arrested and charged with aggravated criminal sexual abuse (Ill. Rev. Stat. 1985, ch. 38, par. 12—16) and unlawful restraint (Ill. Rev. Stat. 1985, ch. 38, par. 10—3). Following a jury trial, defendant was convicted of aggravated criminal sexual abuse and sentenced to seven years' imprisonment. This appeal followed.

■ Defendant first contends that the trial court erred when it admitted evidence of defendant's alleged other criminal conduct. At trial, N.J. and K.W. each testified over defense counsel's objections that defendant told them that the police asked him to find some young girls to go to the prison and have sex with inmates for money. While N.J. and K.W.'s testimony about defendant's solicitation of the girls was irrelevant to the crime charged, we find that any error made by the trial court with respect to this testimony is harmless beyond a reasonable doubt in light of the overwhelming evidence of defendant's guilt.

■ Defendant next contends that the trial court erred when it refused to question prospective jurors whether they would find children to be more believable and sympathetic witnesses than adults. The scope and extent of *voir dire* examination of prospective jurors, including permitting a party to supplement the examination with its own questions, rests within the discretion of the trial court. (134 Ill. 2d R. 234.) A reviewing court will find that the trial court abused its discretion while conducting *voir dire* only when the questions and

procedures employed by the trial court fail to create reasonable assurances that any prejudice or bias of potential jurors will be discovered. (*People v. Williams* (1991), 147 Ill. 2d 173, 218, 588 N.E.2d 983, 999.) After reviewing the record in its entirety, we find that the trial court did not abuse its discretion when it refused to question prospective jurors about their attitudes toward the credibility of children witnesses.

■ Defendant next argues that the trial court erred when it instructed the jury using IPI Criminal 2d No. 3.06—3.07. IPI Criminal 2d No. 3.06—3.07, which was submitted to the jury over defendant's objection, states:

"You have before you evidence that the defendant made statements relating to the offense charged in the information. It is for you to determine what weight should be given to the statements. In determining the weight to be given to a statement, you should consider all of the circumstances under which it was made."

Defendant's statements to the girls here about having sex with inmates for money do not relate to the charge of aggravated criminal sexual abuse. We find, however, that any error caused by submitting this instruction to the jury was harmless beyond a reasonable doubt due to the lack of prejudice caused to defendant and the overwhelming evidence of defendant's guilt. Defendant further argues that IPI Criminal 2d No. 3.14, rather than IPI Criminal 2d No. 3.06—3.07, should have been submitted to the jury to instruct them about the context in which defendant's statements may be considered. Defense counsel, however, failed to tender IPI Criminal 2d No. 3.14 to the trial court at the instruction conference. Moreover, we fail to see how the outcome of this trial would have been different had this instruction been submitted to the jury. We, therefore, conclude that any error made by the trial court with respect to jury instructions is harmless beyond a reasonable doubt.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

TULLY and CERDA, JJ., concur.