THIRD DIVISION

SEPTEMBER 22, 1999

No. 1-97-2158

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County

)

v. )

)

JOSE RIVERA, ) Honorable

) Daniel Kelly,

Defendant-Appellant. ) Judge Presiding.

JUSTICE CERDA delivered the opinion of the court:

Following a jury trial in March 1997, defendant, Jose Rivera, was convicted of possession of a controlled substance (cocaine) with intent to deliver (720 ILCS 570/401 (West 1992)), and was subsequently sentenced to a term of 15 years' imprisonment.  On appeal, defendant argues (1) the trial court erred by denying one of his peremptory challenges during jury selection; (2) he was denied his right to an impartial jury by the trial court's refusal to ask supplemental questions during 
voir
 
dire
; (3) he was denied a fair trial when he was prevented from presenting evidence of police bias against him; and (4) he is entitled to a new sentencing hearing because the trial court improperly considered a statutory factor in aggravation.  For the following reasons, we affirm.

BACKGROUND

In October 1993, defendant, a Hispanic male, was charged with possession of between 400 and 900 grams of a controlled substance (cocaine) with intent to deliver.  Following the denial of defendant's motion to quash the search warrant used to secure his arrest, the case proceeded to trial in March 1997.

At jury selection, the trial court initially addressed the members of the venire as a group.  The court informed the venire that defendant had been charged with a drug offense, and admonished them that defendant was presumed innocent and that such presumption remains with him throughout trial.  The court further explained that the State had the burden of proving defendant guilty beyond a reasonable doubt and that defendant was not required to present any evidence to prove his innocence.  The court followed by asking the venire if they were unable to either understand or accept the foregoing principles.  No member of the venire indicated in the affirmative.  The court further asked the venire if they would treat the testimony of a police officer differently than the testimony of any other witness.  Again, no venire member responded affirmatively.

Prior to individual examination
, defense counsel submitted supplemental questions for 
voir
 
dire
, which were rejected by the trial court.  Defense counsel specifically sought that each juror be asked if he or she had difficulty presuming the innocence of a person accused of being a drug dealer; if they had any family members or friends who experience or have experienced problems with substance abuse; and if they were unable to view the testimony of a law enforcement official objectively.

A total of 28 venire members were questioned.  Following the removal of three members for cause, the court considered the written peremptory challenges of the parties.  Both sides exercised all of their available challenges to each exclude seven jurors.  After the court noted each side's respective strikes, defense counsel made a motion pursuant to 
Batson v. Kentucky
, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986), asserting the State's use of its challenges evidenced a racially discriminatory intent to exclude blacks from the jury.  The four black venire members removed by the State were Zenobia Jenkins, Jerome Sallis, James Jett, and Darrell McKay.

After determining that defendant had established a 
prima
 
facie
 case of racial discrimination, the trial court requested the State to offer race-neutral explanations for its challenges.  In response, the State made its own 
Batson
 motion, commonly known as a "reverse-
Batson
" claim, 
charging defense counsel of engaging in race-gender discrimination by exercising six of its seven peremptory challenges on "white males."  The six excluded jurors in question were William Bonar, Robert Stevenson, William Harling, George Havelka, Ronald Eberly, and Mark Dannenberg.

Proceeding on defendant's 
Batson
 motion, the court found the State's exclusion of Jenkins, Sallis and McKay legitimate.  The court, however, found the State's reasons for excluding Jett illegitimate, and thus nullified the State's peremptory challenge and allowed Jett to serve on the jury.

The trial court then considered the merits of the State's reverse-
Batson
 claim.  T
he court clarified the scope of the State's challenge by noting that one of the excluded jurors, Dannenberg, had also been challenged by the prosecution.  The court accordingly focused only on the exclusions of Harling, Bonar, Stevenson, Havelka, and Eberly.

Th
e trial court never expressly found that the State had made a 
prima
 
facie
 showing of discrimination.  The court instead directed defense counsel to explain the use of his challenges.  Notably, the record shows the court, in hearing defense counsel's proffered reasons, considered only whether the explanations were race-neutral, and did not address whether those reasons were also gender-neutral.

After noting that 
the record provided a sufficient "race-

neutral reason" for Harling's removal, the trial court directed defense counsel to present reasons for challenging the remaining jurors.  Following argument by both sides, the trial court accepted counsel's reasons for excluding Stevenson, Bonar and Havelka.  The court, however, rejected counsel's explanation for Eberly's removal.  Defense counsel explained that Eberly was stricken because "he said *** 'I think so' when asked if he could be fair," and thus "equivocated" regarding his ability to give defendant a fair trial.  The record shows that during 
voir
 
dire
 the trial court asked Eberly if his prior service as a juror would affect his judgment or ability to be fair and impartial in defendant's case.  Eberly responded, "I don't think so."  The court followed by asking Eberly if he would be able to follow the law as instructed and to disregard what he was told during his prior jury service.  Eberly stated "[y]es."  The court further asked Eberly if he could be fair to both sides, listen to the evidence objectively, and base his decision on the evidence and the law presented.  Eberly answered affirmatively to each of these questions.

The trial court found that Eberly indicated 
that he could be fair.  Finding counsel's explanation a pretext for racial discrimination, the court denied the challenge and impaneled Eberly on the jury.

At trial, the State's evidence established that on September 30, 1993, officers with the Chicago police department arrived with a narcotics search warrant at the apartment of David Garcia located at 3040 West Sunnyside in Chicago.  At about 8 p.m., Detective Walter Smith saw defendant enter the front door of the building carrying a gym bag.

Upon a search of the bag, Smith recovered a large triple-

beam scale and a clear plastic bag containing two separate bags of white powder.  Smith then placed defendant under arrest.

During the cross-examination of Officer Smith, defense counsel asked Smith if he had participated in a 1988 police search of the home of defendant's parents.  An objection by the State to counsel's questioning was sustained by the trial court.  At a hearing held outside the presence of the jury, defense counsel explained his questioning was relevant to establish Smith's motive for targeting defendant.  Counsel, however, did not make an offer of proof.  The trial court concluded the line of questioning was not relevant to the events at issue, and accordingly upheld its earlier ruling.

After the State rested, defendant testified that at about 7:30 p.m. on September 30, 1993, he and David Garcia were talking outside of Garcia's apartment building.  Suddenly, he and Garcia were grabbed by several police officers, including Sergeant Michael Byrne, and taken to an adjacent alleyway.  In the alley, Byrne placed a gun to defendant's head, forced him to kneel, and searched him.  Defendant and Garcia were then taken to Garcia's apartment.  Defendant stated he did not have a gym bag when he was taken to Garcia's apartment, and suggested that the bag in which the cocaine was recovered was planted by the police.

Defendant explained that the September 30 incident was not the first time he had encountered Officer Smith and Sergeant Byrne.  Defendant further stated that Byrne had confronted him in the past.  When defendant was asked to describe this earlier confrontation, the State objected.

At a side bar conference, defense counsel explained  defendant's testimony was relevant to establish Byrne's motive for arresting defendant.  Counsel detailed four incidents involving Byrne that occurred between 1987 and 1992.  Specifically, in 1987, Byrne participated in a search of the home of defendant's parents while defendant was present and purportedly made "acrimonious comments."  Further, Byrne participated in a search of defendant's apartment in 1989 during which nothing illegal was recovered and, according to defense counsel, "[t]here was harassment" and "verbal abuse."  In 1992, Byrne participated in another search of defendant's apartment which failed to produce any illegal contraband.  Finally, shortly after the 1992 incident, Byrne was involved in a traffic stop of defendant's van in which defendant and his wife were riding.  Byrne allegedly searched both the van and defendant, and left once defendant's wife went to contact an attorney.  Defense counsel indicated that following both the 1989 and 1992 incidents, defendant's wife filed professional misconduct charges against Byrne.

After considering the State's response, the trial court found the matters sought to be elicited by defendant "totally collateral" to the case.  The court sustained the State's objection and precluded the defense from exploring defendant's previous confrontations with Byrne.

On cross-examination, defendant explained Byrne placed a gun to his head because Byrne had a grudge against his wife for filing professional misconduct charges against him in connection with an earlier incident when Byrne "raided" his house.  Defendant claimed Byrne was seeking revenge for his wife's actions by targeting him, and maintained Byrne was "going to search that whole apartment and find something."

In the State's rebuttal, Byrne denied ever being in the alleyway near Garcia's apartment, and further denied placing a gun to defendant's head.

Following jury deliberations, defendant was convicted of possession of cocaine with intent to deliver and was subsequently sentenced to a term of 15 years' imprisonment.  Defendant now appeals his conviction and sentence.

ANALYSIS

I

Defendant initially contends the trial court erred by denying his peremptory challenge of venireperson Eberly on the basis that it was improperly motivated by a discriminatory intent.

Although peremptory challenges have been traditionally exercised by parties to remove prospective jurors for any reason, the United States Supreme Court has found their use to be subject to constitutional limitations.  In 
Batson v. Kentucky
, 476 U.S. 79, 89, 90 L. Ed. 2d 69, 82-83, 106 S. Ct. 1712, 1719 (1986), the Court held the equal protection clause of the federal constitution prohibits the prosecution from exercising peremptory challenges to remove jurors solely on account of race.  According to the Court, purposeful discrimination in the selection of the venire violates a criminal defendant's constitutional rights because it denies him the protection that a trial by jury is intended to secure.  
Batson
, 476 U.S. at 86, 90 L. Ed. 2d at 80, 106 S. Ct. at 1717.  Further, racially motivated strikes by the State unconstitutionally discriminate against the excluded jurors by denying them participation in jury service on account of their race.  
Batson
, 476 U.S. at 87, 90 L. Ed. 2d at 81, 106 S. Ct. at 1718.

Batson
 
sets forth a three-step process to be followed when analyzing a claim of racial discrimination in the State's use of peremptory challenges.  First, the defendant must make a 
prima
 
facie
 showing that the State has exercised challenges on the basis of the stricken juror's race.
  If the defendant makes this showing, the burden then shifts to the State to articulate a race-neutral reason for excluding the venire member in question.  Finally, the trial court must determine whether the defendant has met his burden of proving purposeful discrimination.  
Batson
, 476 U.S. at 96-98, 90 L. Ed. 2d at 87-89, 106 S. Ct. at 1723-24.

The Court has since extended 
Batson
's prohibition of race discrimination in jury selection to other contexts.  In these later decisions, the Court has placed greater emphasis on the protection of the constitutional rights of the excluded jurors rather than on the rights of the defendant.  For instance, in 
Powers v. Ohio
, 499 U.S. 400, 402, 113 L. Ed. 2d 411, 419, 111 S. Ct. 1364, 1366 (1991), the Court he
ld that a defendant in a criminal trial has standing to challenge the State's use of peremptory challenges to exclude prospective jurors on account of their race irrespective of whether the defendant and the excluded jurors share the same race.  In that case, the Court upheld a 
white defendant's challenge to the State's removal of black jurors.  The Court stressed that although "[a]n individual juror does not have a right to sit on any particular petit jury, *** he or she does possess the right not to be excluded from one on account of race."  499 U.S. at 409, 111 S. Ct. at 1370, 113 L. Ed. at 424.

The Court's concern with the equal protection rights of excluded jurors is further evident from its decision in 
Georgia v. McCollum
, 505 U.S. 42, 120 L. Ed. 2d 33, 112 S. Ct 2348  (1992).  In 
McCollum
, the Court held that the constitution prohibits not only the prosecution, but also a criminal defendant, from engaging in purposeful racial discrimination in the exercise of peremptory challenges.  505 U.S. at 59, 120 L. Ed. 2d at 51, 112 S. Ct. at 2359.
  Again focusing on the constitutional rights of prospective jurors, the Court recognized the State's standing to attack the defendant's use of peremptory challenges on racial grounds.  
McCollum
, 505 U.S. at 56, 120 L. Ed. 2d at 50, 112 S. Ct. at 2357.  Citing the three-part approach developed in 
Batson
, the Court held, if the State demonstrates a 
prima
 
facie
 case of racial discrimination by a defendant, the defendant must articulate a racially neutral explanation for his challenge.  
McCollum
, 505 U.S. at 59, 120 L. Ed. 2d at 51, 112 S. Ct. at 2359.

More recently, in 
J.E.B. v. Alabama ex rel. T.B.
, 511 U.S. 127, 129, 128 L. Ed. 2d 89, 97, 114 S. Ct. 1419, 1421 (1994), the Court extended 
Batson
 to prohibit prosecutors from exercising peremptory challenges to remove venire members solely because of their gender
.  The Court there recognized that a male defendant may assert a 
Batson
 violation where the State removes male jurors on the purported basis of their gender, and noted that 
Batson
's three-step approach would apply in assessing such claims of discrimination.  
J.E.B.
, 511 U.S. at 144-45, 128 L. Ed. 2d at 106-07, 114 S. Ct. at 1429-30.

We have not found, and the parties have not cited, any reported decision of this state that involves or addresses a reverse-
Batson
 claim.  In light of the Court's ruling in 
McCollum
, 
we recognize for the first time that a criminal defendant is prohibited from engaging in purposeful racial discrimination in the exercise of peremptory challenges during jury selection.

Before we address defendant's assertion of error in this case, we comment briefly on the nature of the State's 
motion.  The State originally made a combined "race-gender" discrimination claim based on defendant's exclusion of "white males" from the venire.  A review of the record, however, reveals the trial court treated the State's motion solely as a claim of racial discrimination.  Indeed, both parties acknowledged during arguments before this court that resolution of the motion ultimately turned upon whether the jurors at issue were stricken on account of their race.  Accordingly, we will treat the State's reverse-
Batson
 challenge as a charge of only race discrimination for purposes of reviewing the trial court's ruling.  With respect to the State's hybrid discrimination claim, we note this court has previously found such challenges impermissible under 
Batson
.  See 
People v. Washington
, 257 Ill. App. 3d 26, 34, 628 N.E.2d 351, 356 (1993) (in upholding ruling that the defendant, who had asserted that certain jurors were stricken by the State because they were "black males," had failed to make the requisite 
prima
 
facie
 showing, the court stated it did not believe "
Batson
 applies to alleged combined 'race-gender' discrimination"); 
cf
. 
People v. Harris
, 164 Ill. 2d 322, 344, 647 N.E.2d 893, 904 (1994) (the court, noting the "focus in 
Batson
 and its progeny
 has been on the exclusion of the members of a single, identifiable group, not of different groups considered together," declined to expand 
Batson
's rule "to embrace the simultaneous consideration of different racial or ethnic groups").

We further recognize the concern of applying 
Batson
's safeguards to excluded jurors who are members of a racial majority.  In the instant matter, the State charged defendant of intentionally striking "white" prospective jurors.  Several courts 
addressing this question in cases involving a State's reverse-
Batson
 claim have relied on the broad language of the 
Court's rulings, particularly the 
McCollum
 decision, to find that the race-based exclusion of jurors of any race, including whites, offends the constitutional protections afforded by 
Batson
 and its progeny
.  
See 
Gilchrist v. State
, 340 Md. 606, 622, 667 A.2d 876, 883-84 (1995) (citing cases and finding protection under 
Batson
 "applies equally to white persons and black persons"); 
People v. Gray
, 887 S.W.2d 369, 385 (Mo. 1994) (same, stating "[t]he Equal Protection Clause protects not only members of minority groups but also persons who are members of a racial majority"); 
State v. Knox
, 609 So. 2d 803, 806 (La. 1992) (same); see also 
Use of Peremptory Challenges to Exclude Caucasion Persons As a Racial Group, From Criminal Jury - Post-Batson State Cases
, 47 A.L.R.5th 259 (1997) (discussing cases).  Moreover, as noted by one court, the Court's decision in 
J.E.B.
, in which it acknowledged the equal protection rights of 
male
 prospective jurors to be free from gender discrimination, confirms that 
Batson
's protections are not restricted 
to the exclusion of those minority groups that have traditionally been subject to discrimination.  See 
Gilchrist
, 340 Md. at 622, 667 A.2d at 884.  We similarly do not discern from 
Batson
 and its progeny an intent by the Court to have its rulings apply strictly to racial minorities.  We further do not believe that the interpretation given the equal protection clause by the Court in those cases provides for race discrimination against any individual during the jury selection process.  Accordingly, we find the constitutional protections against the race-based use of peremptory challenges apply to all prospective jurors irrespective of their classification in a racial minority or majority group.

We must now consider whether the trial court properly
 sustained the State's 
reverse-
Batson
 challenge.  As defendant acknowledges, the trial court never expressly made a finding on the issue of the State's 
prima
 
facie
 case of discrimination.  Instead, the court requested defense counsel to explain his challenges.  In 
Hernandez v. New York
, 500 U.S. 352, 359, 114 L. Ed. 2d 395, 405, 111 S. Ct. 1859, 1866 (1991), 
the Court, in reviewing a ruling on a defendant's 
Batson
 motion, held the preliminary issue of whether the defendant has made a 
prima
 
facie
 case becomes moot where the trial court fails to determine whether such a
 showing has been made, the State voluntarily offers reasons for its challenges, and the trial court rules on the ultimate question of purposeful discrimination.  Our supreme court in 
People v. Hudson
, 157 Ill. 2d 401, 427, 626 N.E.2d 161, 171-72 (1993), extended the ruling in 
Hernandez
 and held that the 
prima
 
facie
 issue is rendered moot once the trial court rules on the legitimacy of the State's explanations regardless of whether the State had or had not been prompted by the court to proffer its reasons.  Thus, once the trial court rules on the ultimate question of discrimination, the question of whether the defendant established a 
prima
 
facie
 case becomes academic.
  
Hudson
, 157 Ill. 2d at 427, 626 N.E.2d at 171.  We similarly hold that, in a case involving a reverse-
Batson
 claim by the State, the question of whether the State has sufficiently demonstrated a 
prima
 
facie
 case becomes moot once the trial court rules on the ultimate issue of discrimination irrespective of whether the defendant volunteers explanations for his challenges or is prompted by the court to do so.  In this case, the 
prima
 
facie
 issue became moot when the trial court found defense counsel's proffered reason for Eberly's removal a pretext for racial discrimination.

Defense counsel explained Eberly was stricken because he equivocated about whether he could give defendant a fair trial.  At step two of the 
Batson
 process, the burden is on the proponent of the strike to present race-neutral reasons for challenging the juror in question.  
People v. Figgs
, 274 Ill. App. 3d 735, 739, 654 N.E.2d 555, 559 (1995).  The explanation need not be persuasive, or even plausible, and a "'legitimate reason' is not a reason that makes sense, but a reason that does not deny equal protection."  
Purkett v. Elem
, 514 U.S. 765, 769, 115 S. Ct. 1769, 1771, 131 L. Ed. 2d 834, 840 (1995).  That is, a neutral explanation is one based upon something other than the juror's race. 
 
People v. Munson
, 171 Ill. 2d 158, 174, 662 N.E.2d 1265, 1272 (1996).

In assessing counsel's proffered reason, the focus is on the 
facial validity of the explanation.  
Hernandez
, 500 U.S. at 360, 114 L. Ed. at 406, 111 S. Ct. at 1866.  Absent an inherent discriminatory intent in the proponent's explanation, the reason offered will be deemed race neutral.  
Hernandez
, 500 U.S. at 360, 114 L. Ed. at 406, 111 S. Ct. at 1866.  Certainly, counsel's explanation in this case is facially race neutral and does not reflect a inherently discriminatory motive.  As 
Purkett
 makes clear, however, a facially neutral reason at the second step is not necessarily a legitimate, nonpretextual one under step three.   

Once the proponent presents explanations for its challenges, the trial court then must determine whether the reasons given are a pretext for discrimination.  
Hernandez
, 500 U.S. at 369, 114 L. Ed. 2d at 412, 111 S. Ct. at 1871.  In reviewing this determination, we are mindful that the legitimacy of the proffered reasons is generally a factual matter for the trial court since it is in the best position to observe the course of the 
voir
 
dire
 and assess the demeanor of the prospective jurors as well as the attorneys.  
People v. Wiley
, 165 Ill. 2d 259, 273-

74, 651 N.E.2d 189, 195 (1995).  The trial court's finding is afforded great deference on review
 and will not be overturned unless it is found to be clearly erroneous.  
Hernandez
, 500 U.S. at 369, 114 L. Ed. 2d at 412, 111 S. Ct. at 1871.

Defense counsel's articulated reason in support of Eberly's removal is belied by the record.  Eberly never stated "'I think so'" when asked if he could be fair.  Rather, Eberly responded "I don't think so" when asked if his ability to decide defendant's case would be affected by his prior jury service.  The record further shows that Eberly repeatedly and unequivocally assured the trial court that he could be fair.

Moreover, as the State notes, the defense accepted juror Jenkins, who similarly stated "I don't think so" to one of the court's 
voir
 
dire
 questions.  The courts have recognized an inference of purposeful discrimination in cases involving 
a defendant's 
Batson
 claim where the State fails to exclude a venire member sharing the same characteristic as a juror of a different race and who was excused on the basis of that characteristic, and further does not possess any additional attributes that would meaningfully distinguish him from the stricken juror.  
People v. Randall
, 283 Ill. App. 3d 1019, 1028, 671 N.E.2d 60, 67 (1996); 
People v. Andrews
, 155 Ill. 2d 286, 295, 614 N.E.2d 1184, 1189 (1993).  Jenkins indicated she had been a victim of a robbery, and when asked by the court if this would affect her ability to be fair and impartial, she stated "I don't think so."  Yet, she was accepted by defendant.  Jenkins additionally revealed having both relatives and friends who were police officers and lawyers.  The record shows that Jenkins did not possess any other distinguishing characteristic from Eberly that would favor her service on the jury.  To the contrary, Jenkins possessed attributes that were presumably unfavorable to the defense.

The trial court was in the best position to gauge the legitimacy of defense counsel's explanation, and we cannot now engage in our own independent assessment of that reason.  Based on the foregoing, we conclude that the trial court's determination was not clearly erroneous.  We further note, without setting forth the particular procedure to be employed by the trial court, that the impaneling of Eberley was an appropriate remedy in this case.  See 
Batson
, 476 U.S. at 100 n. 24, 106 S. Ct. at 1725 n. 24, 90 L. Ed. at 90, n. 24. (noting the reseating of improperly stricken juror as a possible remedy); 
People v. Moten
, 159 Misc. 2d 269, 603 N.Y.S.2d 940, 947 (1993) (finding reseating of excluded juror proper, and recognizing that to do otherwise would reward the proponent for the very discrimination 
Batson
 seeks to prevent).

II

Defendant next argues the trial court erred by refusing to ask his supplemental
 questions during 
voir
 
dire
.  The responsibility for both initiating and conducting 
voir
 
dire
 lies with the trial court, and the scope and manner of that examination, including the decision to ask questions tendered by the parties, rests within the court's discretion.  
People v. Cemond
, 242 Ill. App. 3d 1022, 1025, 612 N.E.2d 1, 3 (1992).  As long as the questions and procedures employed by the trial court were sufficient to create reasonable assurances that any prejudice or bias of the jurors would be discovered, and did not operate to thwart the selection of an impartial jury, its decision not to ask supplemental questions will not be error.  
Cemond
, 242 Ill. App. 3d at 1025-26, 612 N.E.2d at 3; 
People v. Johnson
, 276 Ill. App. 3d 656, 658, 659 N.E.2d 22, 24 (1995).

In this case, the trial court's 
voir
 
dire
 examination was sufficiently thorough to reveal any potential prejudice or bias on part of the venire members.  The court specifically informed the venire of the nature of the State's charges, and admonished and questioned them on the presumption of defendant's innocence, the burden of proof required of the State, and their duty to follow the law as instructed in reaching a verdict.  Furthermore, the court explicitly asked if any juror would treat a police officer's testimony differently from that of any other witness, and with respect to those jurors who acknowledged knowing police officers, it engaged in further, more specific, inquiry.  We find the cases cited by defendant unavailing, and conclude the trial court's ruling was not an abuse of discretion.

III

Defendant also asserts the trial court erred by preventing him from exploring the issue of police bias.  He argues he was denied his right to confront witnesses when the court restricted him from cross-examining Officer Smith regarding the 1988 police search of his parents' home.  He further maintains the court denied him the right to present a defense when it restricted his direct testimony, in part, to the September 1993 incident and barred him from discussing the events that occurred between 1987 and 1992 involving Sergeant Byrne.  According to defendant, the elicitation of this evidence was proper to show that he had been unfairly targeted by Officer Smith and Sergeant Byrne in the past, and therefore was necessary to show the officers' bias against him and their motivation to falsify their testimony.

A criminal defendant has a fundamental constitutional right to confront the witnesses against him 
(
People v. Kliner
, 185 Ill. 2d 81, 130, 705 N.E.2d 850, 876 (1998)), which includes the right to cross-examine a witness concerning bias, interest or motive to testify falsely.  
Kliner
, 185 Ill. 2d at 134, 705 N.E.2d at 877.  This right, however, does not preclude the trial court from imposing reasonable limits on a defendant's inquiry.  
Kliner
, 185 Ill. 2d at 134, 705 N.E.2d at 877.  The extent of cross-

examination lies within the sound discretion of the trial court, and absent a clear abuse of that discretion resulting in manifest prejudice to the defendant, the court's ruling will not be disturbed on appeal.  
Kliner
, 185 Ill. 2d at 130, 705 N.E.2d at 876.

The trial court here did not abuse its discretion in restricting defendant's cross-examination of Officer Smith.  Defense counsel failed to demonstrate for the court how Officer Smith would have been biased against defendant or motivated to testify falsely as a result of the 1988 police search.  The evidence used to impeach must give rise to the inference that the witness has something to gain or lose by his testimony.  
People v. Triplett
, 108 Ill. 2d 463, 475-76, 485 N.E.2d 9, 15 (1985).  To be admissible
 the evidence allegedly showing bias or motive must be positive and direct, not remote, speculative or uncertain.  
Triplett
, 108 Ill. 2d at 476, 485 N.E.2d at 15; 
People v. Jones
, 240 Ill. App. 3d 1055, 1060, 608 N.E.2d 22, 26 (1992).
  Here, the mere fact Officer Smith participated in the 1988 police search is not positive and direct evidence of any bias against defendant.  We fail to see how this presumptively legal police action demonstrates bias or motive on the part of Officer Smith.

We are likewise unpersuaded by defendant's other claim of error.  As the trial court found, Byrne's previous searches lacked relevancy.  Relevant evidence is evidence that tends to make the existence of a fact of consequence to the determination of the action more or less probable than it would be without its presentation.  
People v. Printy
, 232 Ill. App. 3d 735, 745, 598 N.E.2d 346, 354 (1992).  Byrne's presumably valid searches, together with defense counsel's vague and general assertions of "harassment" and "verbal abuse," hardly tend to demonstrate the police animus asserted by defendant.  Further, although the filing of misconduct charges by defendant's wife was possibly relevant to show Byrne's motives during the September 30 incident, the court's ruling in this regard was harmless beyond a reasonable doubt.  On cross-examination by the State, defendant stated that Byrne placed a gun to his head in the alley because Byrne had a grudge against his wife for filing misconduct charges with the Department.  Defendant further claimed that Byrne was targeting him in retaliation for his wife's actions and suggested that Byrne secured defendant's arrest by planting the drugs in Garcia's apartment.  Hence, the jury was advised of defendant's asserted defense of being the retaliatory target of Sergeant Byrne, and thus was sufficiently apprised of the possible motives of Byrne and his fellow officers.

IV

Defendant lastly argues his sentence must be vacated because the trial court erroneously considered a statutory factor in aggravation.  As defendant concedes, he has waived this contention by not raising it at the sentencing hearing or in a postsentencing motion.  730 ILCS 5/5-8-1(c) (West 1992); 
People v. Reed
, 177 Ill. 2d 389, 394, 686 N.E.2d 584, 585-86 (1997).  
However, because defendant has a fundamental right to be lawfully sentenced (
People v. Whitney
, 297 Ill. App. 3d 965, 967, 697 N.E.2d 815, 818 (1998)), 
we will review it under the plain error doctrine.  See 134 Ill. 2d R. 615(a); 
Whitney
, 297 Ill. App. 3d at 967, 697 N.E.2d at 818.

In considering the statutory factors in aggravation (730 ILCS 5/5-5-3.2 (West 1996)), the trial court stated "[t]here is no doubt that [defendant was] to receive compensation for committing the offense."  As defendant asserts, this factor should not have been considered since the expectation of compensation is implicit in the offense of possession of a controlled substance with intent to deliver. 
 
People v. McCain
, 248 Ill. App. 3d 844, 851, 617 N.E.2d 1294, 1300 (1993).  However, remandment for resentencing is not required since a review of the record shows the trial court merely noted this factor and placed little, if any, weight on it in determining defendant's sentence.  See 
People v. Bourke
, 96 Ill. 2d 327, 332, 449 N.E.2d 1338, 1340 (1983) (stating remandment is unnecessary where weight given improper aggravating factor is insignificant).
  
The court, instead, focused on the need to deter others from committing drug offenses, and additionally discussed defendant's prior criminal history.  The court's insignificant weight of the above factor is further reflected in the length of the sentence imposed, which fell well below the maximum eligible term of imprisonment.  See 720 ILCS 570/401(a)(2)(C) (West 1996) (sentencing range from 12 years to 50 years).  Since the record shows that the trial court's consideration of an improper aggravating factor did not lead to a greater sentence, we find no need to remand and affirm defendant's sentence.

CONCLUSION

For the following reasons, defendant's conviction and sentence are affirmed.

Affirmed.

CAHILL, P.J., and McBRIDE, J., concur.