# Illinois Official Reports

## Appellate Court

---

**People v. Byrd, 2017 IL App (2d) 140715**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FRANKLIN T. BYRD, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-14-0715 |
| Filed<br>Rehearing denied | April 27, 2017<br>June 7, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 09-CF-1537; the Hon. John S. Lowry, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Thomas A. Lilien, and Ronald C. White, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Joseph P. Bruscato, State's Attorney, of Rockford (Lawrence M. Bauer and Diane L. Campbell, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.<br>Justices Jorgensen and Spence concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, Franklin T. Byrd, appeals from the judgment of the circuit court of Winnebago County, sentencing him to an aggregate prison term of 86 years on his convictions of intentional first-degree murder (720 ILCS 5/9-1(a)(1) (West 2008)) and armed robbery (720 ILCS 5/18-2(a)(4) (West 2008)). He contends that the trial court abused its discretion in refusing to seat a potential juror as a remedy for a violation of *Batson v. Kentucky*, 476 U.S. 79 (1986), and in imposing the sentence. Because the court did not abuse its discretion in refusing to seat the juror or in imposing the sentence, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3    During jury selection, the State exercised peremptory challenges on three African-American potential jurors (Nos. 1, 21, and 22). Following the challenges, defendant requested a hearing pursuant to *Batson*.

¶ 4    At the outset of the hearing, in chambers, the State noted that jurors 21 and 22 had not been excused and were still in the courtroom. The trial court responded that going into the courtroom to excuse the two jurors would draw unnecessary attention. Because juror 1 had been peremptorily challenged earlier that day, the court had already excused juror 1.

¶ 5    The trial court ruled that defendant did not make a *prima facie* case of purposeful discrimination as to either juror 1 or juror 22. As to juror 21, however, the court found that defendant made a *prima facie* case.

¶ 6    The State then offered its race-neutral explanation for challenging juror 21, stating that the juror's brother had been arrested for a drug crime and the juror had visited him in jail. The State maintained that the juror would closely identify with the defendant's sister, who had visited the defendant in jail. The State added that, when it questioned juror 21, she appeared to be defensive, in that she "had her brows knitted" and "had her arms crossed" in reaction to being asked whether the criminal justice system had been fair to her brother.

¶ 7    Before the trial court ruled regarding juror 21, the State commented that "there's no remedy [for] a *Batson* violation." When the court asked defense counsel if she had any response to the State's comment, she responded only that she "[thought] the Court [had] the ultimate discretion whether or not to allow the State to use a peremptory challenge to ensure someone a fair trial."

¶ 8    Before ruling on the *Batson* issue, the trial court gave all of the potential jurors a 15-minute break. After the jurors returned to the courtroom, the court excused jurors 21 and 22. Defendant did not object to the court excusing juror 21.

¶ 9    Upon returning to chambers, the trial court stated that it was rejecting the State's race-neutral explanation for challenging juror 21 and found a *Batson* violation. In doing so, the court noted that it did not observe juror 21 cross her arms or be antagonistic or hostile toward the State. The court added that, although juror 21 might not have completely understood the State's questions, the court did not interpret that as animus or hostility.

¶ 10   The State then stated that it misspoke when it earlier told the court that there was no remedy for a *Batson* violation. The State explained that it had found an Illinois case stating that when there is a *Batson* violation "the proper remedy would be to impanel the juror." When the

court asked defense counsel to respond, she stated that the State had accepted white jurors whom she had seen crossing their arms and "[t]hat's the only other thing [she would] add."

¶ 11 The trial court then discharged the entire jury pool. Defendant did not object or request that juror 21 be seated. The court then stated that it had "declared a mistrial without prejudice." After ruling on various motions *in limine* and other matters, the court asked defense counsel if she had anything else, and she responded no.

¶ 12 The following morning, the trial court reminded the parties that it had discharged the previous jury pool and declared a mistrial and that a new jury pool was ready. The court then noted that defendant had just handed it a motion to seat juror 21. In support of the motion, defense counsel asked that the jury commission be directed to recall juror 21 so that she could be seated. When asked for any authority for doing so, defense counsel referred to *Batson*. She added that the State had misinformed the court that it was not allowed to reinstate juror 21 and then, only after the court had excused the juror, the State had advised the court that it could seat her.

¶ 13 The State responded that defendant never objected when the court declared the mistrial. The State urged that, because defendant had essentially acquiesced in the mistrial, it was too late for him to object. The State noted that, when the court asked defense counsel if she wanted to say anything about the appropriate remedies for a *Batson* violation, she did not respond. The State added that one of the possible remedies was to discharge the jury pool.

¶ 14 The trial court denied defendant's motion to seat juror 21. In doing so, the court stated that, if defendant could provide any authority for seating juror 21, it would reconsider its decision. The record does not indicate that defendant ever did so.

¶ 15 After the trial court denied the motion to seat juror 21, defendant immediately moved to dismiss the case, contending that the *Batson* violation, combined with the State's misrepresentation regarding the lack of potential remedies for that violation, resulted in the denial of his right to have a fair representation of his race on the jury. The trial court denied the motion to dismiss.

¶ 16 Following a jury trial, defendant was found guilty but mentally ill of intentional first-degree murder (720 ILCS 5/9-1(a)(1) (West 2008)), guilty but mentally ill of felony (armed robbery) first-degree murder (720 ILCS 5/9-1(a)(3), 18-2(a)(4) (West 2008)), and guilty but mentally ill of armed robbery involving the discharge of a firearm that caused death (720 ILCS 5/18-2(a)(4) (West 2008)), all arising out of the shooting death of his mother. The jury also found that, in committing first-degree murder, defendant discharged a firearm that caused death (730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2008)), the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty (720 ILCS 5/5-8-1(a)(1)(b) (West 2008)), and the murder was committed in a cold, calculated, premeditated manner pursuant to a preconceived plan, scheme, or design to take a human life (720 ILCS 5/9-1(b)(11) (West 2008)). The trial court entered judgment on the intentional murder and armed-robbery convictions and vacated the felony murder conviction.

¶ 17 At sentencing, the court stated that it had considered the trial evidence, the presentence investigation report, defendant's history, character and attitude, the arguments, defendant's allocution, the victim impact statement, the statutory factors, and the circumstances of the offense. The court noted that it had considered all relevant aggravating and mitigating factors and stated that it would comment on some of those. In discussing the mitigating factors, the court found, based on defendant's demeanor, attitude, sincerity, remorse, and behavior after

returning from treatment with the Department of Human Services, that defendant was on the road to rehabilitation and was unlikely to reoffend. Accordingly, the court gave weight to that factor. The court commented that it was very familiar with defendant's mental health history and that it gave weight to defendant's being intellectually disabled.

¶ 18 Having balanced the mitigating factors with the seriousness of the offense, the trial court sentenced defendant to 30 years' imprisonment for intentional first-degree murder, plus the mandatory 25-year add-on penalty for defendant's having discharged a firearm causing death (see 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2008)). The court imposed a mandatory consecutive sentence for armed robbery of 6 years' imprisonment plus the mandatory 25-year add-on for the discharge of a firearm causing death during the armed robbery (see 720 ILCS 5/18-2(a)(4) (West 2008)). The court noted that, although it was authorized to impose an extended-term sentence, as a matter of discretion, it would not do so. Thus, the aggregate sentence totaled 86 years in prison.

¶ 19 Defendant filed a motion to reconsider his sentence. In denying that motion, the trial court reiterated that it had considered and given weight to defendant's mental illness. Defendant, in turn, filed a timely notice of appeal.

¶ 20                                    II. ANALYSIS

¶ 21 On appeal, defendant contends that (1) the trial court abused its discretion in discharging the first jury pool and refusing to seat juror 21 as a remedy for the *Batson* violation; (2) the trial court abused its discretion in entering judgment on the intentional murder verdict, as opposed to the felony murder verdict, because that opened the door to imposing the mandatory 25-year add-on for the armed robbery conviction; and (3) the trial court abused its discretion in imposing a 30-year prison sentence for first-degree murder.

¶ 22 We first address the *Batson* issue. It is well established that the State's use of a peremptory challenge to exclude a potential juror solely because of the juror's race violates a defendant's fourteenth amendment right to equal protection. *People v. Crawford*, 2013 IL App (1st) 100310, ¶ 102 (citing *Batson*, 476 U.S. at 84). In assessing such a claim, the trial court must apply a three-step procedure. *Crawford*, 2013 IL App (1st) 100310, ¶ 102. First, the court must determine whether the defendant has made a *prima facie* showing that the State exercised a peremptory challenge based on race. *Crawford*, 2013 IL App (1st) 100310, ¶ 102. Second, if the defendant makes the *prima facie* showing, the burden shifts to the State to offer a race-neutral explanation for striking the particular juror. *Crawford*, 2013 IL App (1st) 100310, ¶ 102. Although the State must offer a comprehensible reason, the explanation need not be persuasive or even plausible, so long as it is not inherently discriminatory. *Crawford*, 2013 IL App (1st) 100310, ¶ 102. Third, the court must determine whether the defendant carried his burden of proving purposeful discrimination. *Crawford*, 2013 IL App (1st) 100310, ¶ 102.

¶ 23 The trial court has a pivotal role in evaluating a *Batson* claim, as race-neutral reasons will often involve an assessment of the prosecutor's credibility and the juror's demeanor. *Crawford*, 2013 IL App (1st) 100310, ¶ 103. Because such determinations are uniquely within a trial court's province, a reviewing court must defer to the trial court, absent exceptional circumstances, and must uphold the trial court's ruling unless it is clearly erroneous. *Crawford*, 2013 IL App (1st) 100310, ¶ 103.

¶ 24    In this case, defendant does not contend that the trial court erred in applying the three-step procedure. Rather, he maintains that, once the trial court found a *Batson* violation as to juror 21, it failed to apply the proper remedy.

¶ 25    In *Batson*, the Supreme Court commented on the possible remedies for the racially discriminatory use of a peremptory challenge. In light of the variety of jury selection practices followed by various state and federal courts, the Court expressed no view on whether, upon a finding of purposeful discrimination, the trial court should discharge the venire and select a jury from a new panel not previously associated with the case or disallow the peremptory challenge and resume selection with the improperly challenged juror reinstated on the venire. *Batson*, 476 U.S. at 99 n.24. Thus, the Court recognized two possible remedies for a *Batson* violation: seating the juror who was improperly challenged or discharging the venire and starting jury selection anew with another venire. However, the Court did not state a preference for either remedy or discuss under what circumstances a particular remedy might be appropriate.

¶ 26    Our research has found no Illinois case that has conclusively discussed the appropriate remedy for a *Batson* violation or expressed a preference for either of the remedial alternatives identified in *Batson*. However, there are two Illinois cases that briefly mention remedies for a *Batson* violation.

¶ 27    In *Hunt v. Harrison*, 303 Ill. App. 3d 54 (1999), the court addressed the issue of whether dismissal of a plaintiff's case for a violation of *Batson* was a proper remedy. In holding that it was not, the court cited *Batson*. *Hunt*, 303 Ill. App. 3d at 56 (citing *Batson*, 476 U.S. at 99 n.24). More importantly, the court's review of cases both in and out of Illinois revealed that, where a *Batson* violation is found, courts apply one of the two remedies identified in *Batson*. *Hunt*, 303 Ill. App. 3d at 56. But see Symposium: *Batson at Twenty-Five: Perspectives on the Landmark, Reflections on Its Legacy*, 97 Iowa L. Rev. 1613, 1617-26 (2012) (noting that some state courts have read *Batson* to identify the only two possible remedies, while other state courts, interpreting *Batson* as setting forth only two examples of possible remedies, have applied alternative remedies). The *Hunt* court did not address the issue of which of the two remedies identified in *Batson*, if either, is preferred.

¶ 28    In *People v. Rivera*, 307 Ill. App. 3d 821 (1999), the court held that the defendant's peremptory challenge violated *Batson*. *Rivera*, 307 Ill. App. 3d at 831-32. In so holding, the court noted, without expressing any preference for a particular remedy, that the impaneling of the challenged juror was an appropriate remedy in "[that] case." *Rivera*, 307 Ill. App. 3d at 832 (citing *Batson*, 476 U.S. at 99 n.24).

¶ 29    Although defendant relies on *Rivera* in contending that the trial court here was required to seat juror 21, *Rivera* does not support that contention. Rather, *Rivera* merely recognized that seating a juror is one "possible remedy." *Rivera*, 307 Ill. App. 3d at 832. The court in *Rivera* never suggested that seating a juror is the only remedy. Thus, *Rivera* does not stand for the proposition that a court must always remedy a *Batson* violation by seating the juror.

¶ 30    Because the law recognizes that there are at least two possible remedies, either seating the juror or discharging the entire venire, depending on the jury selection practice being followed, it is necessarily a matter of discretion as to which remedy should be applied. See *State v. Sessions*, 342 P.3d 738, 744 (Utah 2014) (*Batson* remedy is matter of discretion under the circumstances of the particular case); *State v. Nelson*, 85 So. 3d 21, 33-34 (La. 2012) (noting that the majority of courts have delegated the *Batson* remedy to the discretion of the trial

court); see also *Koo v. McBride*, 124 F.3d 869, 873 (7th Cir. 1997) (*Batson* remedy is a matter upon which courts are accorded significant latitude). An abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it. *People v. Rivera*, 2013 IL 112467, ¶ 37. Thus, the issue here is whether, under the particular circumstances, the trial court abused its discretion in denying defendant the remedy of seating juror 21. It did not.

¶ 31     The record shows that juror 21 remained with the venire in the courtroom while the trial court conducted the *Batson* hearing in chambers. After hearing the State's explanation for challenging juror 21, but before ruling on the ultimate issue of whether defendant had proved purposeful discrimination, the court excused juror 21. Defendant, however, did not object to the court's doing so.[1] Nor did defendant request that juror 21 be seated in the event that the court found a *Batson* violation. Instead, defendant waited until the following day to move for juror 21 to be seated. By that time, however, juror 21 had been excused for more than 12 hours. Thus, there was a significant risk that she had been exposed to information related to the case or had discussed the case. That alone was a proper reason for the court to refuse to seat juror 21. Further, having excused juror 21 and the entire venire without objection, the court had opted to start jury selection all over with a new venire. Under the circumstances, the court's refusal to seat juror 21 was not arbitrary, fanciful, or unreasonable. Thus, the court did not abuse its discretion in denying defendant's motion to seat juror 21.[2]

¶ 32     Defendant contends that there was no manifest need for the trial court to declare a mistrial and discharge the venire. That contention misses the mark, however, as manifest necessity applies only in the context of whether a mistrial implicates double jeopardy.

¶ 33     The well-established rule is that jeopardy does not attach until the entire jury is impaneled and sworn. *People v. Palen*, 2016 IL App (4th) 140228, ¶¶ 39-52 (citing *Martinez v. Illinois*, 572 U.S. ___, ___, 134 S. Ct. 2070, 2072 (2014)); *People v. Dahlberg*, 355 Ill. App. 3d 308, 312 (2005). If jeopardy did not attach, then it is unnecessary to reach the issue of whether manifest necessity required declaring a mistrial. *Palen*, 2016 IL App (4th) 140228, ¶ 52. Here, because the jury had not been impaneled and sworn, and thus jeopardy had not yet attached, the issue of manifest necessity had not materialized.

¶ 34     We next address the sentencing issues. Defendant contends that the trial court abused its discretion in entering judgment on the intentional murder, as opposed to the felony murder, conviction. Because the court was obligated to impose judgment on the more serious version of the offense, it had no discretion to do otherwise.

¶ 35     A defendant cannot be convicted of more than one murder arising out of the same physical act. *People v. Pitsonbarger*, 142 Ill. 2d 353, 377 (1990). When multiple murder convictions have been entered for the same act, the less culpable convictions must be vacated.

---

[1]The State asserts that defendant forfeited appellate review of this issue because he failed to object when the trial court excused juror 21. Although defendant did not object when the court excused juror 21, it is arguable whether he forfeited the issue, as he moved to have juror 21 seated before jury selection began the following morning. Nonetheless, even if defendant forfeited the issue, it is reviewable under the plain-error doctrine, as discrimination during jury selection raises a serious question as to the fairness of the proceeding. See *People v. Blackwell*, 164 Ill. 2d 67, 74-75 (1995).

[2]Although we recognize that seating an improperly challenged juror is a possible remedy under *Batson*, we offer no opinion as to what circumstances would make that remedy appropriate.

*Pitsonbarger*, 142 Ill. 2d at 377. When a defendant is charged with intentional, knowing, and felony murder arising out of the death of one victim, there can be only one murder conviction. *Pitsonbarger*, 142 Ill. 2d at 377-78. More importantly, because intentional murder involves the most culpable mental state, the court must enter judgment on the intentional murder conviction and vacate the less culpable knowing and felony murder convictions. *Pitsonbarger*, 142 Ill. 2d at 378.

¶ 36 Applying *Pitsonbarger* here, once the jury returned verdicts on intentional and felony murder, the trial court was obligated to enter judgment on only the more culpable intentional murder conviction and vacate the less serious felony murder conviction. Because the court had no discretion to do otherwise, it did not abuse its discretion.

¶ 37 Defendant relies on *People v. Cooper*, 194 Ill. 2d 419 (2000), in arguing that, although there are three theories of first-degree murder, it is a single offense, and thus *Pitsonbarger* does not control. In *Cooper*, the issue was whether the defendant, who murdered one victim, could be retried for felony murder after his conviction of knowing murder was reversed. In holding that a retrial on a separate theory of first-degree murder was barred by the right against double jeopardy, the supreme court explained that, regardless of the particular theory, first-degree murder is one crime for purposes of double jeopardy. *Cooper*, 194 Ill. 2d at 428-29. Accordingly, the reasoning in *Cooper* does not impact the rule in *Pitsonbarger* that a court must enter judgment on the most serious version of first-degree murder. Thus, *Cooper* does not support defendant's position.

¶ 38 We note that defendant alternatively asserts that his sentence for first-degree murder should be reduced from 30 years' to 20 years' imprisonment. He does so, however, in a single sentence at the end of his argument. The failure to cite any authority or articulate an argument constitutes a forfeiture of the issue. See *People v. Oglesby*, 2016 IL App (1st) 141477, ¶ 205 (citing Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013)). Forfeiture aside, our review of the sentencing shows that the trial court considered all of the applicable mitigating factors, including defendant's mental health, and did not abuse its discretion in arriving at the 30-year prison sentence for murder.

¶ 39                                          III. CONCLUSION

¶ 40 For the reasons stated, we affirm the judgment of the circuit court of Winnebago County. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2014); see also *People v. Nicholls*, 71 Ill. 2d 166, 178 (1978).

¶ 41 Affirmed.