300

VIRGINIA LIMER, as Independent Ex'r of the Estate of James Limer, Deceased, Plaintiff-Appellant, v. ANNE CASASSA, as Independent Ex'r of .the Estate of Homer C. Lyman, Deceased, Defendant-Appellee.

Fourth District    No. 4—94—0875

Argued May 23, 1995.—Opinion filed July 11, 1995.

James Wylder (argued), of James Walker, Ltd., of Bloomington, for appellant.

Christopher L. Nyweide (argued), of Livingston, Barger, Brandt & Schroeder, of Bloomington, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

In this medical malpractice case, plaintiff Virginia Limer, as independent executor of the estate of James Limer (James), deceased, appeals from a judgment entered in the circuit court of McLean County in favor of defendant Anne Casassa, as independent executor of the estate of Homer C. Lyman, deceased. The timeliness of plaintiff's action and refiling after voluntary dismissal were previously considered by this court in *Limer v. Lyman* (1991), 220 Ill. App. 3d 1036, 581 N.E.2d 411 (*Limer I*), and *Limer v. Lyman* (1993), 241 Ill. App. 3d 125, 608 N.E.2d 918 (*Limer II*).

In this appeal by plaintiff, the issues are whether (1) the trial court erred by refusing to question potential jurors during *voir dire* concerning the jurors' beliefs regarding health care reform, legal reform, and the jury trial system; and (2) reversible error occurred when, during closing argument, defendant's counsel commented, in violation of an order *in limine*, that plaintiff's decedent knew the risk of smoking cigarettes. We affirm.

The trial judge conducted *voir dire* of prospective jurors. Among the questions proposed by plaintiff were:

"5. Since the time of the last political conventions up to the present there has been much discussion in the press and media about healthcare reform, legal reform, jury trials, etc. Do you have any quarrel with the jury system as a way of resolving disputes between parties? Do you believe in the jury trial system as a legitimate method for our society, through the voice of twelve members of the community, to decide issues when parties are unable to agree?

6. Would you agree, based on what you have heard and read, that there are some law suits filed which should not be filed because they lack merit? Would you also agree that there are law suits which have been filed which are justified and the filing party is entitled to recover for injuries sustained?"

The trial judge rejected these questions.

At plaintiff's request, the trial judge did inform the jury that, in a very real way, the parties were James and Dr. Homer Lyman, and asked the jurors whether they had any feelings that doctors should be treated differently in terms of determining liability for negligence. The trial judge did ask the plaintiff's proposed question No. 7, which stated:

"Given that you know nothing about this case, do you understand that it is your duty to set aside everything you have read or heard, and instead base your decision in this case only on the evidence you hear and the applicable law."

At defendant's request, inquiry was also made of the jurors as to whether (1) they had any preconceived notions or prejudices toward

the parties, (2) they could be fair and impartial, (3) there was anything that would prevent them from being fair and impartial to both sides, and (4) they would follow the law as given.

■ Plaintiff has demonstrated no bias on the part of the jurors in this case. (See *Cleveringa v. J.I. Case Co.* (1992), 230 Ill. App. 3d 831, 860, 595 N.E.2d 1193, 1214.) However, plaintiff is not required to demonstrate the jury was prejudiced in order to challenge the adequacy of *voir dire.* (*People v. Lanter* (1992), 230 Ill. App. 3d 72, 75, 595 N.E.2d 210, 213.) Plaintiff argues that she was deprived of an opportunity to inquire if jurors had concerns about the jury system as a method of resolving disputes and in particular about the impact of publicity related to tort reform and health care reform.

■ Supreme Court Rule 234 states:

"The court shall conduct the *voir dire* examination of prospective jurors by putting to them questions it thinks appropriate touching their qualifications to serve as jurors in the case on trial. The court may permit the parties to submit additional questions to it for further inquiry if it thinks they are appropriate, or may permit the parties to supplement the examination by such direct inquiry as the court deems proper. Questions shall not directly or indirectly concern matters of law or instructions. The court may acquaint prospective jurors with the general duties and responsibilities of jurors." (134 Ill. 2d R. 234.)

Assuring the selection of an impartial panel of jurors free from bias or prejudice is the purpose of *voir dire.* (*Kingston v. Turner* (1987), 115 Ill. 2d 445, 464, 505 N.E.2d 320, 328; *Moore v. Edmonds* (1943), 384 Ill. 535, 541, 52 N.E.2d 216, 219.) The scope and extent of the examination of prospective jurors rest in the discretion of the trial court, and an abuse of that discretion will be found only if a review of the record discloses that the trial judge's conduct thwarted the selection of an impartial jury. (*Kingston,* 115 Ill. 2d at 464-65, 505 N.E.2d at 329.) The appropriate determination on review is whether the questions and procedures employed by the trial court created a reasonable assurance that any prejudice or bias would be discovered. (*People v. Williams* (1991), 147 Ill. 2d 173, 218, 588 N.E.2d 983, 999; *People v. Cemond* (1992), 242 Ill. App. 3d 1022, 1025-26, 612 N.E.2d 1, 3.) The trial court must be alert to attempts by parties to convert *voir dire* into a vehicle for preeducating and indoctrinating prospective jurors as to a particular theory or defense. (*Lanter,* 230 Ill. App. 3d at 75, 595 N.E.2d at 213.) Although inquiry may be made as to whether a juror has a disagreement with a particular rule of law which will be applied in that case (*Kirk v. Walter E. Deuchler Associates, Inc.* (1979), 79 Ill. App. 3d 416, 424, 398 N.E.2d 603, 608; *Schnei-*

*der v. Kirk* (1967), 83 Ill. App. 2d 170, 176-77, 226 N.E.2d 655, 658), there is no reason to question prospective jurors as to extraneous legal principles or concepts which do not bear on whether they are willing to accept and follow the instructions concerning the law of the case. *People v. Stack* (1986), 112 Ill. 2d 301, 311, 493 N.E.2d 339, 344; *People v. Dow* (1992), 240 Ill. App. 3d 392, 396, 608 N.E.2d 259, 263.

■ With respect to paragraph (5) of plaintiff's suggested *voir dire* questions, the first sentence is not a question, but a statement. There are many abuses to which the jury selection process would be subjected by requiring such an observation to be made by the trial court. With respect to the questions in paragraph (5), they are not objectionable, but this subject was adequately covered by the trial court in other questions, and it was not error for the trial court to decline to ask those specific questions.

With respect to the questions in paragraph (6), they are also not particularly objectionable, but there was no error for the trial court to refuse to ask these questions. The parties are only entitled to a fair and impartial jury. They are not entitled to have an unlimited number of questions asked of the jurors, and the trial court has discretion with respect to these matters.

In this case, the questions the trial court posed of the jurors would elicit the willingness of the jurors to follow the law in the case, which implicitly requires an acceptance of the jury system as it is currently employed. The *voir dire* rulings simply did not amount to an abuse of discretion.

■ The remaining issue is whether reversible error occurred when, during closing argument, defendant's counsel commented, in violation of an order *in limine*, that plaintiff's decedent knew the risk of smoking cigarettes. Plaintiff sought damages for the failure of Dr. Lyman to properly diagnose James' lung cancer and his failure to order annual physical examinations. Defendant attempted to raise an affirmative defense that the lung cancer was caused by James' cigarette smoking, but the affirmative defense was stricken. The trial court ruled that the cause of the cancer was not a defense for failure to diagnose the condition in time to avoid the fatal consequences. In any event, the affirmative defense was related to count I of the complaint (wrongful death), not count II (survival action); count I was dismissed; and this court upheld that dismissal while reinstating count II. *Limer I*, 220 Ill. App. 3d at 1044, 581 N.E.2d at 416.

Prior to trial, plaintiff filed a motion *in limine* which asked, among other things, that the defendant be prohibited from referring to "[a]ny suggestion that James Limer was at fault, negligent, or

engaged in any tortious conduct, as a result of smoking cigarettes." The motion stated that there was no affirmative defense in this case alleging fault on the part of James and that "[i]t is a given in this case that [James'] cigarette smoking has been implicated as a cause of his lung cancer." The motion in this respect was granted. Nevertheless, during defendant's closing argument, the following incident occurred:

"[Defendant's counsel]: What is curious about this is that the one particular year that the physical does not take place is the one year the Plaintiff is now saying that we made a mistake. I understand what is being said about Dr. Lyman and how he would suggest or recommend a physical, but the fact is that Mr. Limer was getting a physical every single year. He can't be said to not be an intelligent person. We believe that he was. *He certainly knew the risks of smoking cigarettes—.*

[Plaintiff's counsel]: Judge, excuse me, counsel, but there is no evidence of that, and it is not an issue in this case. Counsel could have made it an issue, but it is not.

THE COURT: Sustained." (Emphasis added.)

Plaintiff's cited cases are distinguishable from the case at bar. Here, plaintiff's objection was sustained by the trial court. In addition, it was plaintiff who interjected James' smoking into the case. During opening statements, plaintiff's counsel informed the jury that James smoked cigarettes almost all of his adult life and that Dr. Lyman knew James was at high risk and should have had an annual physical examination. During trial, plaintiff introduced the videotaped evidence deposition of James. James testified he smoked cigarettes until Labor Day of 1981. Dr. Lyman knew he had been a smoker and had quit. Prior to James quitting smoking, Dr. Lyman had told him to quit. During cross-examination, Limer testified he began smoking at about age 18. At the time he quit, he was 57 years old. During closing argument, plaintiff's attorney stated:

"You heard about how cigarette smoking is bad, and it is because it is bad and because it can cause disease that [James] should have had a physical. [Dr.] Lyman should have suggested to him you are at high risk and should have a physical. The fact that cigarette smoking was a cause of [James'] cancer, if not the only cause, exposure to toxins in the development of the cancer is not a defense."

The jury was instructed, at plaintiff's request, that the fact a third person not a party to this lawsuit may have been a cause of the injury was no defense to another person who may have proximately caused the injury. The issue instruction, also tendered by plaintiff, did not refer to any affirmative defense.

Prior to opening statement and closing argument, the jurors were informed by the trial judge that the arguments of counsel were not to be considered as evidence. The conduct of defendant's counsel did not deny plaintiff a fair trial. See *Betts v. Manville Personal Injury Settlement Trust* (1992), 225 Ill. App. 3d 882, 917-18, 588 N.E.2d 1193, 1216; *Central Information Financial Services, Ltd. v. First National Bank* (1984), 128 Ill. App. 3d 1052, 1057, 471 N.E.2d 992, 995-96.

The judgment of the circuit court of McLean County is affirmed.

Affirmed.

KNECHT, P.J., and GREEN, J., concur.