Order filed September 11, 2025.     2025 IL App (5th) 240623
Motion to publish granted
October 10, 2025.                      NO. 5-24-0623

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| STEVEN BECKHAM, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Madison County. |
| | ) | |
| v. | ) | No. 19-L-381 |
| | ) | |
| DONALD PETERMANN, | ) | Honorable |
| | ) | Christopher P. Threlkeld, |
| Defendant-Appellee. | ) | Judge, presiding |

_____

PRESIDING JUSTICE McHANEY delivered the judgment of the court, with opinion.
Justices Barberis and Vaughan concurred in the judgment and opinion.

**OPINION**

¶ 1     This case involves a motor vehicle accident which occurred because Donald Petermann

(Petermann) did not properly secure furniture on a trailer being pulled by his vehicle. The furniture

items fell into the path of a van being driven by Steven Beckham (Beckham). When Beckham

slowed down to avoid hitting the furniture, he was rear-ended by a semi-trailer truck (hereafter

"semi"). The trial court granted Beckham's summary judgment motion on the issue of liability.

The jury returned a verdict in favor of Petermann. From the denial of his posttrial motion, Beckham

timely appealed. On appeal, Beckham claims that he was prejudiced by the improper introduction

of extraneous information during *voir dire* and that the jury was improperly instructed. He also

claims that the trial court erred by denying his motion for judgment notwithstanding the verdict

(judgment *n.o.v.*) or alternative motion for a new trial. For the following reasons, we affirm.

1

¶ 2                          I. BACKGROUND

¶ 3      The motor vehicle accident occurred on February 3, 2018, on Interstate 270 in Madison County. Furniture items became dislodged from a trailer being pulled by Petermann's vehicle and spilled onto the highway. When Beckham slowed down to avoid hitting those items, he was rear-ended by a semi. Petermann did not see this impact and denied that it occurred.

¶ 4      Before trial, Beckham filed a motion for partial summary judgment on the issue of liability. On February 6, 2024, the trial court entered a written order ruling on various motions *in limine* and objections to portions of the evidence deposition of plaintiff's medical expert. Included in this order, was the following sentence: "Plaintiff's motion for summary judgment is granted as to liability." At the jury trial, before *voir dire*, the court and counsel discussed the proper wording of the statement of the case to be read to the venire. Petermann argued that the court's prior summary judgment ruling on liability did not automatically make him liable for damages. He contended that the jury should have the option to find that Beckham's claimed injuries/damages were not proximately caused by his negligence. Beckham responded that the court should now grant summary judgment on the issue of "causation of injuries," and the jury should only be instructed to consider the amount of damages to be awarded. The trial court clarified its previous ruling on liability as follows:

          "So what I did at our final pretrial was I ruled that the accident was caused by
     [Petermann], that the chain reaction of the load spilling onto the road caused the accident.
     I have not gotten into the issue of damages on that, so the issue of damages is still for
     determination by the jury.

          So what we are going to do is defendant—it's found that [Petermann] is liable and
     negligent for causing the accident and that the jury will be required to decide the nature

                                          2

and extent of the damage. [Petermann] disputes the nature and extent of the damages caused by the accident."

The statement of the case that was read to the venire included the following: "[Petermann] denies the nature, extent, and duration of injuries claimed by [Beckham]. As the party bringing the lawsuit, [Beckham] has the burden of proof."

¶ 5 Before *voir dire* began, Beckham's attorney asked the trial court to excuse prospective juror number 15 (hereafter "juror 15") because she knew Beckham, and he therefore presumed that Petermann would want juror 15 removed for cause, because she would likely favor Beckham. Beckham's attorney failed to tell the court that juror 15 was the sister of Beckham's ex-wife, against whom Beckham had recently prevailed in a "very horrible custody battle." The trial court denied the request to excuse juror 15 at that time.

¶ 6 During *voir dire*, the trial court asked if any prospective jurors knew the parties and/or their attorneys. The following colloquy occurred in the presence of the venire:

"THE COURT: Anybody else know the plaintiff or the plaintiff's counsel? So [juror 15], what is your relationship to the plaintiff—you know him. Do you see him often?

PROSPECTIVE JUROR 15: I don't see him often, no, but my opinion of him is not that great, so it's probably not best if I am on the jury.

THE COURT: So would you say for that reason you're predisposed to disbelieve what [he] has to say?

PROSPECTIVE JUROR 15: Probably. I don't want to be like that, but I mean, I can't—just from what I know from myself, I don't—I can't trust what he says."

Sometime later, prospective juror number 14 (hereafter "juror 14") asked to speak with the judge in private. Outside the presence of the venire, juror 14 told the court that he might be influenced

3

by what juror 15 said. In response to further inquiry by the court, juror 14 stated that if he was chosen, he would follow the court's instructions. Ultimately, the trial court struck both juror 14 and juror 15 for cause.

¶ 7    Beckham's attorney made a motion to dismiss the entire "array"[1] because of the statements of juror 15, asserting: "[S]ince she's said that I wouldn't believe anything [Beckham] says, since she's already commented to the whole array as to his credibility, I think the whole array has been poisoned." Petermann objected to the request, arguing that juror 15's statements were her personal opinions. The trial court denied Beckham's request.

¶ 8    During opening statement, Petermann's attorney informed the jury that though the trial court ruled that Petermann's negligence caused the impact between his van and the semi, Beckham had the burden to prove that the accident caused him injuries. Petermann testified at trial that he did not see the impact between Beckham's van and the semi. He observed Beckham and his passenger walking around the scene of the accident, and Beckham did not appear to be injured.

¶ 9    Petermann testified that Beckham said he was not hurt, and Beckham's passenger smirked and motioned to his back. Then, both Beckham and his passenger complained that their backs hurt, which Petermann testified seemed "fake." Petermann testified that he thought their behavior was suspicious and did not believe either individual was injured. The following colloquy occurred:

> "Q. Do you think that they were pretending to be hurt, or were they walking in already hurt? Which is it? Tell the jury.
>
> A. When they got out of the van, I heard giggling, and they come to the back of the van and stood in front of me. And I asked them if they were both all right, and

[1]Counsel used interchangeably the words "array" and "panel." We deduce he meant the entire venire.

they said yes. And then the passenger motioned oh, my back, and then right away the driver said the same thing.

Q. So your position is there's nothing wrong with these gentlemen?

A. They seemed—they said that they were fine, so yeah."

¶ 10 Beckham next called Dr. Thomas Lee, his medical expert, who testified that he was an orthopedist but could no longer perform surgeries. Dr. Lee stated that Beckham continued to work in a heavy physical labor job, and that he did so without difficulty, so he never provided Beckham with a work restriction. However, he speculated that one day Beckham could need neck and lower back surgeries. Before any surgery, Dr. Lee explained that an injured individual should attempt more conservative treatments, including medications and physical therapy. However, he never prescribed medication or physical therapy for Beckham. Beckham denied any neck pain at his first appointment and did not report neck pain on the date of his last treatment with Dr. Lee. Dr. Lee acknowledged that he last saw Beckham in 2019 and did not know what his current medical condition was. He stated that each condition that was visible on Beckham's MRI test was a condition that could be caused by natural aging. Dr. Lee also opined that the disc protrusion in Beckham's neck and the herniations in his lower back were caused by the rear-end collision in February of 2018. Dr. Lee further opined that Beckham would require future surgical treatment.

¶ 11 Beckham testified and began by explaining that he was involved in a custody battle with the mother of his children and that juror 15 was related to the children's mother. He then turned to the accident, testifying that the truck that struck him was traveling 70 miles per hour, and at the time, he was traveling only 20 miles per hour. He stated that the damage to his van was substantial and described the van as "crushed up like a soda can."

¶ 12    On cross-examination, Beckham testified that since the accident he continued to work as a floor installer. He agreed that the work was hard on his body, and that it was common for him to have pulled muscles and soreness because of the physical demands of the job. After testifying that pulled muscles and soreness were commonplace, Beckham was impeached both with his deposition testimony, and from Dr. Lee's notes, where Beckham denied ever experiencing muscle soreness due to his job. Beckham admitted that he did not immediately seek medical care following the accident, but he later had back pain and went to an emergency room. He refused pain medication because he was concerned about addiction due to a family history but was then impeached with his own medical records which documented his use of pain medication. Beckham testified that his right knee was also injured in the accident and was treated by Dr. Lee. He admitted that Dr. Lee's medical records contained no reference to a knee injury complaint and documented a normal physical examination. Beckham confirmed that he did not follow the emergency room discharge instructions to follow up with his primary care physician and instead went to a chiropractor. Although he received chiropractic treatment and was discharged from further care, Beckham testified that he continued to have "extreme" and "excruciating" pain. He was impeached with chiropractic records revealing that he was asymptomatic at discharge.

¶ 13    Before Beckham began treatment with Dr. Lee, he testified that he had ongoing neck pain. He was impeached with medical records from a July 2018 visit to St. Anthony's Health Center in Alton, documenting that he did not complain of neck pain and had a normal physical examination. Beckham complained of knee pain to Dr. Lee which he related to the accident as "[b]oth my knees did strike a blow to the dash." He then identified medical records from treatment he received in February 2018, three days after the accident, when he was seen by an orthopedist named Dr. Pate. At that time, Beckham only complained of left knee pain and was also given a neck examination,

6

which was normal. He confirmed that when he began treatment with Dr. Lee later in 2018, he only complained of severe neck pain. However, the "pain diagram" Beckham filled out at Dr. Lee's office listed no neck, shoulder, elbow, or knee pain.

¶ 14 On June 3, 2019, Beckham had an appointment at St. Anthony's Health Center for a mass on his right leg. When providing his medical history, Beckham made no other medical complaints, and the examination of his neck on that date was normal. On August 12, 2019, Beckham returned to St. Anthony's Health Center complaining of a broken foot due to a fall. He made no other medical complaints, and his musculoskeletal examination was normal. On August 15, 2019, Beckham was seen at St. Louis University Hospital for the same broken foot. The injury report stated that he had been racing bikes when the injury occurred. During cross-examination, Beckham denied that his injury involved racing and testified that a heavy object fell on his foot. The health history for this appointment did not reference any of the injuries Beckham attributed to the semi collision. On August 29, 2019, Beckham returned to the orthopedic clinic at St. Louis University Hospital, where he reported that he had no other orthopedic complaints, and his physical examination was normal.

¶ 15 Beckham next testified about his lost income claim, and said that, due to his injuries, he had to hire additional workers for his flooring business. He could not produce any payroll documents to substantiate any income loss because these additional employees were paid in cash.

¶ 16 At the close of evidence, Petermann's request for a directed verdict was denied. After hearing closing arguments and receiving the court's instructions, the jury returned Verdict Form C, finding in favor of Petermann.

¶ 17 Beckham filed a postjudgment motion arguing that the jury pool was tainted; that although the trial court determined that Petermann was liable for the accident, the jury must have

reconsidered liability in reaching its determination not to award him damages; and that the trial court should have used a different verdict form. The trial court denied the postjudgment motion, and Beckham timely appealed.

¶ 18                                II. ANALYSIS

¶ 19                        A. Jury Instructions and Verdict Form

¶ 20    Beckham argues on appeal that the trial court's pretrial summary judgment ruling on liability against Petermann precluded the jury from finding that Beckham sustained no injuries resulting from the accident. He contends that because liability was directed in his favor, the jury should not have been allowed to decide whether the accident was the proximate cause of any of his injuries. In essence, Beckham argues that the jury was required to award monetary damages. We disagree.

¶ 21    "To prevail in a negligence action, a plaintiff's complaint must set forth facts establishing the existence of (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, and (3) an injury proximately caused by that breach." *Coole v. Central Area Recycling*, 384 Ill. App. 3d 390, 396 (2008) (quoting *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 430 (2006)). "[W]hether the breach [of the duty of due care owed by the defendant] was the proximate cause of the plaintiff's injuries [is a] factual matter[ ] for the jury to decide." *Marshall*, 222 Ill. 2d at 430 (citing *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 114 (1995)); see also *Peach v. McGovern*, 2019 IL 123156, ¶ 53 ("The issue of whether an automobile accident has proximately caused any injury is uniquely a question of fact for the jury to decide." (citing *Redmond v. Socha*, 216 Ill. 2d 622, 644-45 (2005))).

¶ 22    The trial court's clarification of its summary judgment liability ruling against Petermann established that the court's ruling was limited to the fact that Petermann breached a duty he owed

8

to Beckham. The trial court's ruling did not include a finding that Petermann's breach of that duty was a proximate cause of any claimed injury to Beckham. Though the trial court ruled that Petermann's negligence caused the rear-end collision to Beckham's van, it was left to the jury to determine first, whether the rear-end collision resulted in any damages and second, the value of any such damages. Even if "a defendant's liability is established, a plaintiff must prove actual damages before he can recover." *Cancio v. White*, 297 Ill. App. 3d 422, 427 (1998) (the mere fact that the accident occurred as a result of defendant's negligence does not, in any way, establish that plaintiff sustained physical injuries (citing *Jeffrey v. Chicago Transit Authority*, 37 Ill. App. 2d 327, 336 (1962))).

¶ 23　The issue of whether the rear-end collision was the proximate cause of Beckham's claimed injuries was repeatedly argued throughout the trial. We find it significant that during one of the numerous arguments concerning this issue, Beckham's attorney stated that the jury could disregard the testimony of Beckham's doctor and could "choose to determine that because of his work and because of the way he is, that he walk[ed] into Dr. Lee's office not damaged *** [and] they can enter a zero verdict." We find that there is ample evidence in the record to support the conclusion that this is *exactly* what the jury chose to determine.

¶ 24　　　　　　　　　　　　B. Jury Instructions

¶ 25　Beckham next argues that the trial court erroneously instructed the jury. Specifically, he contends that the instructions should not have included the word "negligence" but instead should have included the word "liable." He also contends that because of the trial court's summary judgment ruling on the issue of liability, the jury should not have been instructed that it needed to decide if the "negligence of the defendant proximately caused the injury." Finally, Beckham argues

9

that the trial court erred in giving Verdict Form C, instead of Verdict Form A, which would have given the jury the option to enter a zero for each damage element.

¶ 26 Jury instructions are important implements to communicate the accurate principles of law to a jury based on the evidence presented. *People v. Nash*, 2012 IL App (1st) 093233, ¶ 26. The instructions assist the jury in reaching a conclusion based on the law and evidence. *Id.* To prevail on a claim that the jury instructions provided were erroneous, the reviewing court must determine whether, when "taken as a whole, the instructions fairly, fully, and comprehensively apprised the jury of the relevant legal principles." *Schultz v. Northeast Illinois Regulation Commuter R.R. Corp.*, 201 Ill. 2d 260, 273-74 (2002). Additionally, "[a] reviewing court ordinarily will not reverse a trial court for giving faulty instructions unless they clearly misled the jury and resulted in prejudice to the appellant." *Id.* at 274.

¶ 27 Illinois Pattern Jury Instruction, Civil, No. 1.02 allows the trial court to instruct the jury that the court previously found that the defendant was either negligent, liable, or "other finding." Illinois Pattern Jury Instructions, Civil, No. 1.02 (1995) (hereafter IPI Civil 1.02). Beckham asked the trial court to instruct the jury: "The Court has found the defendant Donald Petermann was liable, so that is not an issue you will need to decide." Petermann argued that one of the alternate words should be used. Ultimately, the jury was instructed that: "The Court has found the defendant Donald Petermann was negligent, so that is not an issue you will need to decide."

¶ 28 The notes on use of IPI Civil 1.02 state:

"This instruction should be used when *** summary judgment on an issue has been granted in favor of plaintiff. In the first sentence, the term 'liable' should be used only when the court has found as a matter of law that all of the elements of the cause of action

10

have been proved and the only issue remaining is damages." IPI Civil 1.02 (1995), Notes on Use, at 14-15.

As stated *supra*, the trial court ruled that Petermann's negligence caused the accident. However, the trial court did not rule that Beckham suffered injuries as a result of that accident. Therefore, it remained Beckham's burden to prove "all of the elements of the cause of action." *Id.* Accordingly, the trial court did not abuse its discretion in using the word "negligence" instead of the word "liable" in IPI Civil. 1.02.

¶ 29   Beckham next argues that the trial court erred when it gave Petermann's tendered Illinois Pattern Jury Instructions, Civil, No. 20.01 (1995) (hereafter IPI Civil 20.01). Beckham did not tender an alternate version.

¶ 30   A party is entitled to have the jury instructed in a way that presents the issues, the applicable principles of law, and his theory of the case. *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 505 (2002). The trial court has the discretion to determine which instructions should be provided. *Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516, 549 (2008). On appeal, we must determine if the instructions fairly and comprehensively informed the jury of the applicable law and issues to be decided. *Schultz*, 201 Ill. 2d at 273-74. An instructional error warrants a new trial only if the error results in "serious prejudice to a party's right to a fair trial." *Heastie v. Roberts*, 226 Ill. 2d 515, 543 (2007).

¶ 31   To preserve a claim of instructional error, the party opposing the instruction must both (1) object when the instruction is offered and (2) submit an alternate version of the instruction. *Baumrucker v. Express Cab Dispatch, Inc.*, 2017 IL App (1st) 161278, ¶ 63.

¶ 32   Here, Beckham's attorney objected to Petermann's submitted "issues instruction," stating: "I don't want the issues instruction to be given at all because the Court found the defendant liable.

11

I'm objecting to Defendant's Number 8, for the record." The trial court recognized Beckham's concern with the instruction but stated that it would be given over his objection. Petermann's tendered IPI Civil No. 20.01 stated: "The plaintiff claims that the negligence of the defendant was the proximate cause of plaintiff's alleged injuries. The defendant denies that his negligence proximately caused plaintiff's injuries, and denies the nature, extent and duration of plaintiff's alleged injuries."

¶ 33    We note that although Beckham objected to this instruction, he opted not to present an alternative issues instruction. Accordingly, he waived the right to present this issue on appeal. *Baumrucker*, 2017 IL App (1st) 161278, ¶ 63. However, even if Beckham had presented the required alternative instruction, we find that his claim is meritless. The introduction to section 20.00 of the Illinois Pattern Jury Instructions, Civil—which includes IPI Civil No. 20.01— recommends providing juries with applicable issues instructions. The introduction states:

> "An issue instruction tells the jury what points are in controversy between the parties and thereby simplifies their task of applying the law to the facts—a task made more difficult in many instances after jurors have participated in several types of cases.
>
> The committee recommends that such an instruction be given; if tendered, the court has the duty to give it." Illinois Pattern Jury Instructions, Civil, 20.00, Intro. 1 (1995) (citing *Goertz v. Chicago & North Western Ry. Co.*, 19 Ill. App. 2d 261, 270 (1958)).

Consistent with our analysis, *supra*, we conclude that the issues in this case were clearly summarized in this instruction and that the jury was fairly and comprehensively informed of the applicable law. *Schultz*, 201 Ill. 2d at 273-74.

¶ 34    Finally, Beckham claims that the trial court should have given Verdict Form A instead of Verdict Form C. We disagree. The focus of Beckham's argument is that the title of Illinois Pattern

12

Jury Instructions (Civil) Verdict Form C, is "Contributory Negligence More Than 50%." He argues that this verdict form was improper because the trial court previously entered judgment as to causation, and thus, contributory negligence was inapplicable. Secondly, he contends that this verdict form can only be used in a case where contributory negligence is over 50%. The Illinois Pattern Jury Instructions, Civil, provides instructions for use of verdict forms in negligence cases in Illinois Pattern Jury Instructions (Civil) B45.01 (1995). The instructions for Verdict Form C provide: "*If you find for defendant's name and against plaintiff's name*, or if you find that plaintiff's contributory negligence was more than 50% of the total proximate cause of the injury or damage for which recovery is sought, then you should use Verdict Form C." (Emphasis added.) *Id.* Verdict Form C is appropriate for cases where the plaintiff's contributory negligence is more than 50%. It is also the correct verdict form "[i]f you find for defendant's name and against plaintiff's name ***." See *Orzel v. Szewczyk*, 391 Ill. App. 3d 283, 289-90 (2009) (finding that the trial court committed no error in using Verdict Form C after striking a contributory negligence affirmative defense). Accordingly, we find that the trial court did not abuse its discretion by giving Verdict Form C. *Id.* at 289 (citing *La Salle Bank, N.A. v. C/HCA Development Corp.*, 384 Ill. App. 3d 806, 813 (2008)).

¶ 35     C. New Trial Because Prospective Juror Expressed Negative Opinion of Beckham

¶ 36     Beckham next argues that because the trial court questioned juror 15 and extracted "prejudicial information" about her relationship with Beckham in the presence of the venire, the trial court should have granted Beckham's subsequent request to declare a mistrial and "dismiss the entire panel." Beckham's attorney did not use the word "mistrial." However, his request to "strike the panel and start over" can be construed as such.

13

¶ 37    Illinois Supreme Court Rule 234 provides the general structure of a court's and the parties'

*voir dire* examination of prospective jurors:

> "The court shall conduct the *voir dire* examination of prospective jurors by putting
> to them questions it thinks appropriate touching upon their qualifications to serve as jurors
> in the case on trial. The court may permit the parties to submit additional questions to it for
> further inquiry if it thinks they are appropriate, and shall permit the parties to supplement
> the examination by such direct inquiry as the court deems proper for a reasonable period
> of time depending upon the length of examination by the court, the complexity of the case,
> and the nature and extent of the damages." Ill. S. Ct. R. 234 (eff. May 1, 1997).

"[T]he purpose of *voir dire* is to assure the selection of an impartial panel of jurors free from
prejudice or bias and provide counsel an intelligent basis on which to exercise any challenges."
*People v. Walls*, 2022 IL App (1st) 200167, ¶ 36 (citing *People v. Metcalfe*, 202 Ill. 2d 544, 552
(2002); see also *Limer v. Casassa*, 273 Ill. App. 3d 300, 302 (1995)). The trial court maintains the
discretion to determine the scope and extent of examination by the parties' attorneys. *Limer*, 273
Ill. App. 3d at 302. "The scope and extent of the examination of prospective jurors rest in the
discretion of the trial court, and an abuse of that discretion will be found only if a review of the
record discloses that the trial judge's conduct thwarted the selection of an impartial jury." *Id.* On
appeal, we will review the questions and procedures used by the trial court to determine if there is
a reasonable certainty that any bias or prejudice would have been discovered. *Id.*

¶ 38    We note that, for some inexplicable reason, Beckham's attorneys failed to inform the trial
court about the nature of their client's relationship with juror 15, whose sister was Beckham's ex-
wife and a party to a contentious child custody case in which Beckham had prevailed. This
omission by his attorneys created the very issue about which Beckham now complains. Equally

14

inexplicable is why counsel simply did not ask the trial court to question juror 15 in chambers or at a sidebar, so that if she did blurt out something prejudicial, it would not have been heard by another prospective juror.

¶ 39    Beckham argues that the responses juror 15 made to the trial court's *voir dire* questions amounted to extraneous information, which poisoned the entire venire. As extraneous information is presumptively prejudicial, the party need only show "that the information relates directly to something at issue in the case and that it may have influenced the verdict." *People v. Collins*, 351 Ill. App. 3d 175, 179 (2004) (citing *People v. Mitchell*, 152 Ill. 2d 274, 341 (1992); *Birch v. Township of Drummer*, 139 Ill. App. 3d 397, 409 (1985)). Accordingly, because the actual effect of the conduct on the minds of the jurors cannot be proved, the standard to be applied is whether the information involved " ' "such a probability that prejudice will result that it is [to be] deemed inherently lacking in due process." ' " *People v. Hobley*, 182 Ill. 2d 404, 458 (1998) (quoting *People v. Holmes*, 69 Ill. 2d 507, 514 (1978), quoting *Estes v. Texas*, 381 U.S. 532, 542-43 (1965)). However, "[t]he safeguards of juror impartiality, such as *voir dire* and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Smith v. Phillips*, 455 U.S. 209, 217 (1982).

¶ 40    Beckham argues that this case is similar to *Thornton v. Garcini*, 364 Ill. App. 3d 612 (2006). *Thornton* was a medical malpractice case involving the death of a premature infant. After the jury was selected, members of the seated jury received and reviewed newspaper articles about premature births, the development of the child, and the likelihood of survival at 23 weeks of gestation. The appellate court reversed and remanded for a new trial because the defendant physician could not establish that the jurors were not prejudiced or improperly influenced by the articles. *Id.* at 618. We first note that *Thornton* is inapposite. Here, no jurors had been selected

15

when juror 15 made her statements. Juror 15 simply stated her personal opinion. We find that her personal opinion does not reach the level of improper "extraneous information." As noted by the United States Supreme Court: "it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Smith*, 455 U.S. at 217. We conclude that juror 15's personal opinion regarding Beckham's trustworthiness was not presumptively prejudicial.

¶ 41    We note that Beckham complains that he did not have the opportunity to refute juror 15's stated bias: "Plaintiff could not refute the attack on his credibility from Juror 15. He could not call Juror 15 in his case to explore these opinions and basis thereof." However, juror 15 made her statements at the beginning of *voir dire* before Beckham's attorneys began questioning prospective jurors. Thus, counsel had an opportunity to ascertain whether any other juror would be influenced by juror 15's statements. Beckham's attorneys chose not to do so.

¶ 42                    D. Judgment *n.o.v.* and Motion for New Trial

¶ 43    Beckham's final argument is that he was entitled to either a judgment *n.o.v.* or a new trial. "Judgment notwithstanding the verdict should not be entered unless the evidence, when viewed in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand." *Holton v. Memorial Hospital*, 176 Ill. 2d 95, 109 (1997); *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967). "Judgment notwithstanding the verdict is not appropriate if 'reasonable minds might differ as to inferences or conclusions to be drawn from the facts presented.' " *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 131-32 (1999) (quoting *Pasquale v. Speed Products Engineering*, 166 Ill. 2d 337, 351 (1995)). Stated another way, a judgment notwithstanding the verdict should not be entered if "there is any evidence, together with reasonable inferences to be drawn therefrom, demonstrating a substantial factual dispute, or where the assessment of credibility of the witnesses or the

16

determination regarding conflicting evidence is decisive to the outcome." *Maple v. Gustafson*, 151 Ill. 2d 445, 454 (1992). As the Illinois Supreme Court stated:

> "A trial court cannot reweigh the evidence and set aside a verdict merely because the jury could have drawn different inferences or conclusions, or because the court feels that other results are more reasonable. [Citations.] Likewise, the appellate court should not usurp the function of the jury and substitute its judgment on questions of fact fairly submitted, tried, and determined from the evidence which did not greatly preponderate either way. [Citations.]" *Id.* at 452-53.

On appeal, we review a decision on a motion for judgment notwithstanding the verdict on a *de novo* basis. *Thornton v. Garcini*, 237 Ill. 2d 100, 107 (2010) (citing *McClure*, 188 Ill. 2d at 132).

¶ 44 In contrast to a judgment *n.o.v.*, a trial court may order a new trial, if, after weighing the evidence, the court determines that the verdict is contrary to the manifest weight of the evidence. *Maple*, 151 Ill. 2d at 454 (citing *Mizowek v. De Franco*, 64 Ill. 2d 303, 310 (1976)). " 'A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary and not based upon any of the evidence.' " *Id.* (quoting *Villa v. Crown Cork & Seal Co.*, 202 Ill. App. 3d 1082, 1089 (1990)). On appeal from a denial of a motion for a new trial, we will not reverse that decision unless we find that the trial court abused its discretion. *Id.* at 455.

¶ 45 In Illinois, courts have determined that the amount of damages to be assessed is a question of fact for the jury to determine. *Snelson v. Kamm*, 204 Ill. 2d 1, 36-37 (2003) (citing *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 470 (1992); *Baird v. Chicago, Burlington & Quincy R.R. Co.*, 63 Ill. 2d 463, 472-73 (1976)). Upon review of a damages award, we must give the jury's decision great weight. *Id.* at 37. The individualized nature of personal injury cases "makes it

17

impossible to establish a precise formula to determine whether a particular award is excessive or not." *Id.* Moreover, a trial judge may not reweigh evidence if he or she would have arrived at a different verdict. *Id.* (citing *Drews v. Gobel Freight Lines, Inc.*, 144 Ill. 2d 84, 97 (1991)). "Indeed, a court reviewing a jury's assessment of damages should not interfere unless a proven element of damages was ignored, the verdict resulted from passion or prejudice, or the award bears no reasonable relationship to the loss suffered." *Id.* (citing *Gill v. Foster*, 157 Ill. 2d 304, 315 (1993)). When reviewing a question as to the sufficiency of damages, the court must consider the entire record. *Stanford v. City of Flora*, 2018 IL App (5th) 160115, ¶ 27 (citing *Hastings v. Gulledge*, 272 Ill. App. 3d 861, 864 (1995)).

¶ 46    Here, the trial court clarified that the issue of damages was a matter for the jury to decide. The jury heard Petermann's testimony that Beckham and his passenger appeared uninjured until the passenger pointed toward his back, after which they both claimed to have back pain. While Petermann opted not to utilize an independent medical examiner or other medical expert to counter the testimony of Dr. Lee, we find that the record is replete with evidence to support the jury's finding in favor of Petermann. Beckham testified that because of the rear-end collision, his vehicle "was completely totaled. I mean, the whole, like I said, the windows were completely blown out. It took the rear end up through the back floorboard in the inside and crushed it up like a soda can." The jury was provided with this photograph of Beckham's damaged van:



A picture is worth a thousand words. Clearly, Beckham's van was not "crushed up like a soda can." From this picture, the jury could reasonably infer that Beckham's testimony regarding his claimed injuries was also greatly exaggerated, if not totally fabricated. Beckham was repeatedly impeached regarding his claimed injuries and the absence of documents of the injuries in his medical records. Additionally, multiple medical examinations documented "normal" results with no limitations, which contradicted Beckham's subjective complaints. Further, Beckham provided no documentation to support his claim of lost wages/business income.

¶ 47    After viewing the evidence in a light most favorable to Beckham, we do not find that the evidence so overwhelmingly favored him that the zero damages verdict should be overturned. *Holton*, 176 Ill. 2d at 109; *Pedrick*, 37 Ill. 2d at 510. We conclude that the trial court did not abuse its discretion in denying Beckham's motion for judgment *n.o.v.* or alternate motion for a new trial. We will not reweigh the evidence or set aside this jury's verdict because the jury could have

19

reached a different conclusion. *Maple*, 151 Ill. 2d at 452. We do not find that the jury's verdict was contrary to the manifest weight of the evidence. *Id.* at 454 (citing *Mizowek*, 64 Ill. 2d at 310).

¶ 48                                      III. CONCLUSION

¶ 49    For the foregoing reasons, the trial court's ruling to deny Beckham's motions for judgment *n.o.v.* and alternate motion for new trial is affirmed.


¶ 50    Affirmed.

_____

*Beckham, Steven v. Petermann, Donald*, 2025 IL App (5th) 240623

_____

**Decision Under Review:**    Appeal from the Circuit Court of Madison County, No. 19-L-381, Honorable Christopher P. Threlkeld, presiding.

_____

**Attorneys for Appellant:**    Joshua R. Evans of Jerseyville and Edward W. Unsell of East Alton for Steven Beckham

_____

**Attorneys for Appellee:**    Adam S. Johnson, James T. Opel, of Edwardsville, for Donald Petermann

_____